16 484,
16 483
16 484
8a 209
9a 215
16 484
24 507
16 484
f 13a 404
14a 233
16 484
15a 55

## Rice v. Bush et al.

1. Motion for Judgment Upon Pleadings, How Regarded.— In passing upon a motion by one party for judgment upon the pleadings, after issue joined, all the material allegations of the opposite party must be taken as true; and if the pleadings of the opposite party,

though defective in form, are nevertheless sufficient in substance to sustain a judgment in his favor, the motion should not be granted.

2. KNOWN PRINCIPAL NOT NAMED, NOT BOUND.— In an action by the vendee of real estate, the complaint showed that a contract *under seal* for the sale of the property was executed by one person as *principal and owner*, without indicating in writing that any other person was interested in the premises, though it appeared that the vendee knew when the instrument was executed that there was another owner who held the legal title to the property. *Held,* that the interest of the *known* but *unnamed principal* was *not bound* by the contract.

3. GENERAL AVERMENT OF OWNERSHIP, WHEN SUFFICIENT.— The allegations of the complaint being that two certain persons, naming them, were the equitable owners of certain real estate, but that the legal title stood in the name of one only, *held,* that such averment of ownership was sufficient *in substance* as against a motion for judgment upon the pleadings, though the same might have been obnoxious to a special demurrer, or to a motion to make more definite and certain.

## *Error to District Court of Arapahoe County.*

THIS was an action to compel the specific performance of a contract to convey real estate.  John T. Rice was plaintiff below; the defendants were William H. Bush, Willard Teller and Mary D'Arcy.

The complaint alleges that Bush and Teller were the equitable owners of the property; that the legal title stood in the name of Teller; that Bush had full power and authority to sell the same for such price and upon such terms as he pleased; and that in pursuance of such authority said Bush, claiming to act in his own behalf and for said Teller, and with his knowledge and consent, executed certain written agreements at the time of their respective dates, as follows:

### FIRST AGREEMENT.

"DENVER, COLO., April 9, 1887.

"Received of J. T. Rice fifty dollars as earnest money, and in part payment for the purchase of the following described piece or parcel of land, lying and being in the

county of Arapahoe and state of Colorado, to wit: Lots twenty-three and twenty-four, block fifty-one, East Denver, which I have this day sold to said J. T. Rice for the sum of six thousand seven hundred and sixty-two 50-100 dollars on terms as follows, viz.:. On delivery of warranty deed the sum of two thousand seven hundred and sixty-two 50-100 dollars cash, and buyer to assume note for $4,000 secured by trust deed now on said property. And it is agreed that in case the title of said premises is not perfect and cannot be made perfect within thirty days from date hereof, this agreement shall be void and the above fifty dollars refunded. But if the title to said premises is perfect and not taken within thirty days from date hereof, the said fifty dollars to be forfeited to me; but it is agreed and understood by all the parties to this agreement that said forfeiture shall in no way affect the right of either party to enforce the specific performance of this contract.

"Wm. H. Bush, Principal.      [seal.]"

SECOND AGREEMENT.

"This agreement, made and entered into this fourteenth day of April, A. D. 1887, by and between J. T. Rice, party of the first part, and W. H. Bush, party of the second part, witnesseth, that whereas said W. H. Bush is the owner of lots numbered twenty-three and twenty-four (23 and 24), block numbered fifty-one (51), East Denver, and has given said J. T. Rice an option on said lots for thirty days from April 9, A. D. 1887, now, therefore, the said Bush being desirous of selling said lots to one W. G. Russell, or some client of said Russell's, it is hereby agreed by and between said J. T. Rice and W. H. Bush, that whereas said Bush has paid to said Rice one hundred and fifty dollars on account of said option and agrees to pay to said Rice three hundred dollars ($300) more in full payment for said option on or before thirty days from date hereof, provided sale to said Russell or client is consummated within thirty days from

date hereof: If sale is not consummated to said Russell or clients and balance of three hundred dollars not paid by Bush to Rice within thirty days from date hereof, said Rice hereby agrees to pay to said Bush one hundred dollars ($100), and said Bush, in consideration therefor, hereby agrees to and with the said Rice, that the said option given by said Bush to said Rice of date April 9, A. D. 1887, for thirty days, shall continue in force from May 14, A. D. 1887, to June 14, A. D. 1887.

"Dated April 14, A. D. 1887.

                        "J. T. RICE,    [SEAL.]
                        "WM. H. BUSH.  [SEAL.]"

The complaint further alleges that Bush did not sell the property to Russell or any client of his within thirty days from April 14, 1887; and that on or about May 16, thereafter, plaintiff tendered to Bush the $100 provided for in said last mentioned agreement, but that Bush refused to accept the same, and that on the same day he informed plaintiff that he, Bush, would not convey said premises to plaintiff pursuant to the terms of said agreements, or either of them. The tender of the $100 is renewed in the complaint, and plaintiff offers to pay the same into court for the use of said Bush. Plaintiff also alleges that he has ever since May 14, aforesaid, been ready and willing to comply with the contract on his part, and offers to comply with the terms of sale and purchase pursuant to the terms of the agreements.

It is further alleged that on or about May 24, 1887, the defendant Teller by deed conveyed and delivered possession of the property in controversy to the defendant Mary D'Arcy, who had full knowledge of the agreements aforesaid and of plaintiff's rights in the premises. That defendants had perfect title to the property and power to convey the same, but refused to perform the contracts aforesaid, etc. Prayer for specific performance and other relief. The defendants filed separate answers, to which the plaintiff in turn filed replications.

The cause being thus at issue, the several defendants moved for judgment in their favor respectively on the ground that the pleadings on the part of plaintiff were insufficient to sustain the action against them. These motions were sustained by the court below, and judgment in the action was rendered accordingly. To reverse said judgment the plaintiff brings the cause to this court.

The sections of the statute of frauds referred to in the opinion read as follows:

" Sec. 8. Every contract for the leasing for a longer period than one year, or for the sale of any lands or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."

" Sec. 9. Every instrument required to be subscribed by any party, under the last preceding section, may be subscribed by the agent of such party, lawfully authorized." Gen. Stat. 1883, p. 508.

Section 9 was amended in 1887 by adding thereto the words " by writing." Session Laws, 1887, p. 274. But the amendment did not go into effect until after the execution of the instruments as above stated.

Mr. Oscar Reuter, for plaintiff in error.

Messrs. Teller & Orahood and Mr. C. M. Kendall, for defendants in error.

Mr. Justice Elliott delivered the opinion of the court.

The action of the district court in sustaining the motions of the several defendants for judgment upon the pleadings is the only matter assigned for error. In passing upon a motion by one party for judgment upon the pleadings, after issue joined, all the material allegations of the opposite party must be taken as true; and if the pleadings of the opposite party, though defective in form, are neverthe-

less sufficient in substance to sustain a judgment in his favor, the motion should not be granted. In general, a motion for judgment upon the pleadings cannot properly be granted except in cases where the pleadings are not sufficient to sustain a different judgment notwithstanding any evidence which might be produced.

The principal questions to be considered upon this review may be stated thus:

1. To what extent, if at all, under the pleadings may the several defendants be held liable upon the written instruments sued on?

2. To what extent, if at all, may their several interests in the property as alleged be affected by a judgment in this action?

It will be observed that neither of the written instruments purports to have been executed by Mr. Teller; his name nowhere appears in or upon them. They do not purport to have been executed for him or in his behalf by any party assuming to be his agent; nor do they refer directly or indirectly to any other writing or memorandum by which he can be identified as the seller of the property or as a party to the contract. On the contrary, the instruments purport to have been executed by Mr. Bush, who expressly describes himself as "principal" in the first, and as "owner" of the property to be conveyed in the second. The two instruments for the purposes of this action are to be construed as one contract. Such contract is controlled by the statute of frauds in force at the time, which provided that *every contract for the sale of any lands should be void, unless the contract or some note or memorandum thereof, expressing the consideration, should be in writing and subscribed by the party by whom the sale was to be made or by the agent of such party, lawfully authorized.* Gen. Stats. 1883, p. 508. But see Amendment, Session Laws 1887, p. 274.

Under the statute of frauds as it existed in this state prior to the amendment of 1887, an agent acting under parol authority might execute the written contract or memorandum

required by the statute for the sale of real estate, and thus bind his principal. This construction of the statute has been too long established by judicial decisions to be easily overthrown. Thus far, the authorities are generally agreed. But as to the proof by parol of other matters relating to such writings, the decisions are contradictory. For example, on the one hand, the rule has been announced that a contract for the sale of land cannot be enforced unless the names of the purchaser and of the seller appear upon the face of the written contract or memorandum, or are so designated thereby that they can be identified without parol proof. On the other hand, it has been decided that an agent authorized by parol to sell the land of his principal may enter into such contract in his own name without in any manner disclosing his principal, and that the purchaser upon discovering the real principal may enforce the contract against him, and for that purpose may prove the name of such principal as well as the authority of his agent by parol evidence. While the more rigid rule requiring that the names of the parties should be in some way disclosed by the contract or memorandum itself, would seem to be based upon the more reasonable as well as the more logical construction of the statute according to the natural import of its language, the more relaxed rule doubtless grew out of certain supposed equitable considerations developed by cases of peculiar hardship. The first step allowing the agent's authority to be shown by parol having been taken, the next was readily ventured upon. The argument relied upon for such departure may be stated thus: Since the authority of the agent to sell may be shown by parol, the name of the principal giving such authority will be disclosed as an almost inseparable concomitant of such proof; and it being established that a certain person as principal has given to a certain other person as agent, control over the former's estate with power to sell the same, and the agent having exercised such authority, the purchaser must be held to have acquired an equitable title, since he acquired it from one clothed with

lawful authority to sell. It is further urged that if the agent to sell did not disclose his principal at the time of entering into the contract, it was no fault of the buyer, and the buyer should not be deprived of the benefit of his bargain by the fault of the agent of the other contracting party, especially when such fault consisted not in want of authority to sell, but merely in the manner of executing such authority.

Whatever weight there may be in arguments like the foregoing, in cases where the *unnamed* principal is also *unknown* to the other contracting party, the reasoning loses its force whenever it appears that the real principal, though *known* at the time of making the contract or memorandum, was *not named* nor in any manner designated or referred to therein.

In the record before us it affirmatively appears by the plaintiff's own pleadings that he knew at the time of entering into the contract with Mr. Bush — at the very time of making the first agreement — that Mr. Teller was an owner of the property contracted for, and the only one who could convey the legal title thereto. Under such circumstances, if plaintiff desired the contract to bind Mr. Teller, he should have required the same to be drawn in such terms as would express that intent and effectuate that purpose. The plaintiff had full knowledge as to the ownership and title of the property contracted for, as we must assume from the complaint. Therefore, by accepting the individual contract of Mr. Bush, instead of requiring the contract to be executed also by or on behalf of Mr. Teller, the plaintiff must be held to have relied on the individual covenants and personal responsibility of Mr. Bush, in case of a breach of such contract, and his remedy must be limited accordingly. This view is strengthened, though not in our opinion necessarily controlled, by the fact that the written instruments are under seal, there being no averment that Mr. Teller ever in any manner ratified or performed the agreements, or either of them, either in whole or in part.

*Chandler v. Coe*, 54 N. H. 561–576; *Ford v. Williams*, 21 Howard, 289; *Grafton v. Cummings*, 99 U. S. 100; *Stackpole v. Arnold*, 11 Mass. 27; *Anderson v. Harold*, 10 Ohio, 399; *Briggs v. Partridge*, 64 N. Y. 357; *Yerby v. Grigsby*, 9 Leigh (Va.), 387; *Eppich v. Clifford*, 6 Colo. 493, and cases cited; *Williams v. Uncompahgre Canal Co.*, 13 Colo. 469; Pomeroy on Spec. Perf., secs. 89, 326; Fry on Spec. Perf., sec. 146 *et seq.*, and notes.

From the foregoing it is apparent that, under the pleadings, the plaintiff cannot have a recovery for or on account of the Teller interest in the property, either against him or his grantee. But the complaint avers that both Teller and Bush were the equitable owners of the property. True, Mr. Teller in his answer not only denies that Bush was his agent, but denies that Bush had any interest whatever in the property. Mr. Bush, also, in his answer denies all the material averments of the complaint. Nevertheless, for the purposes of the motion under consideration, this court, as well as the trial court, is bound by the matters averred in the complaint, even though the same may be defectively pleaded. Hence, Teller and his grantee are proper parties to the action so long as the alleged equity of Bush in the premises is undetermined. See *Henry v. Travelers' Insurance Co.*, *ante*, p. 179, and authorities there cited.

According to the pleadings, the defendant Bush occupies a position in reference to the written agreements quite different from the other defendants. The complaint shows that Mr. Bush executed both agreements in his own name. He executed them alone as " principal " and " owner." He received from plaintiff $50 advance payment upon the first agreement. Shortly thereafter he paid plaintiff $150 to secure a suspension of the first agreement for a period of thirty days, and agreed, upon the happening of a certain event, to pay plaintiff $300 more to be released from the first agreement altogether. He further agreed that if the event did not happen by which he might be entitled to be released from the first agreement, and in case he should not

pay to plaintiff the further sum of $300, that the first agreement should continue in force for another month upon plaintiff's paying to him the sum of $100. The event did not happen entitling him to be released from the first agreement. He did not pay to plaintiff the further sum of $300. But the plaintiff did, shortly after the expiration of the suspension of the first agreement, tender to Mr. Bush the sum of $100 for the purpose of continuing the first agreement in force. The sum so tendered Mr. Bush refused to accept, and about the same time informed plaintiff that he would not comply with the contracts of sale as evidenced by the written agreements.

The argument that the tender was not made in due time, because not made on May 14, or May 15, which was Sunday, is not sound. Plaintiff did not agree to pay the $100 on or before May 14 in order to continue the first agreement in force. On the contrary, the second agreement did not permit plaintiff to renew the first agreement by making such payment until after the expiration of the thirty days' suspension. Mr. Bush was entitled to the full period of suspension, including the whole of May 14, in which to carry through, if he could do so, the proposed transaction by which he might secure a release from the first agreement altogether. No particular date was specified for the payment of the $100 by plaintiff, though it is evident that prompt payment was contemplated by the contract. A payment or tender of payment on May 16 was in reasonable time under the circumstances.

It is claimed that the refusal by Mr. Bush to accept the sum of $100 tendered by plaintiff was a breach of the contract on the part of Mr. Bush. Certainly the implied undertaking on the part of Mr. Bush to accept the $100 is not the principal contract of which plaintiff now seeks the specific performance. The tender of the $100 was for the purpose of continuing the first agreement in force. In equity the refusal to accept the tender did not have the effect to prevent such continuance. The tender was as effectual to

continue the first agreement as the acceptance of the tender would have been. The mere refusal to accept the tender was no injury to plaintiff; it was not of itself such a breach of the contract to convey as would constitute a cause of action in plaintiff's favor.

It is not intended by this opinion to encroach in the least upon the domain of the facts of this case, but merely to discuss the legal effect of the pleadings on the part of the plaintiff. As to the alleged interest of the defendant Bush in the property in controversy the complaint is sufficient in substance, though the averments might have been obnoxious to a special demurrer or to a motion to make more definite and certain. Whether the alleged conduct and declarations of the defendant Bush, indicating that he repudiated the written agreements and that he would not perform them, were sufficient to obviate the necessity of a tender or offer on the part of plaintiff to fully perform his part of the contract, that is, to pay the sum of $2,762.50 and assume the incumbrance of $4,000, would seem to be mixed questions of law and fact to be determined upon final trial rather than by a motion for judgment on the pleadings.

The conditions and covenants of the written instruments are peculiar and somewhat difficult of construction. The matters relied on to show the breach as well as the waiver of said conditions and covenants rest almost entirely in parol. Not only the defendant's conduct and declarations, but the conduct and declarations of both parties, and all the facts and circumstances of the case so far as competent to be introduced in evidence, considered in connection with the lapse of time in bringing the suit, would doubtless have afforded the trial court advantages for drawing proper inferences and arriving at correct conclusions as to the rights and liabilities of the parties which are not and cannot be presented upon the consideration of a motion for judgment upon the pleadings. *Cal. Ins. Co. v. Gracey*, 15 Colo. 70.

It would be quite impracticable and unprofitable to attempt to anticipate further the questions which might arise

upon such a trial. Upon the issues as made, or upon such issues as might have been framed by a liberal allowance of amendments to the pleadings, the case should have been tried below before seeking a review in an appellate court. By trial upon the merits most and perhaps all of the difficulties which now surround the case may disappear. The judgment is reversed and the cause remanded.

*Reversed.*