[No. 612.  Decided February 6, 1893.]

ZACHARY HEALD, *Appellant*, v. MARY HODDER *et al.*, *Respondents*.

MECHANICS' LIENS—LABOR PERFORMED UPON CREDIT OF CONTRACTOR—WHEN OWNER BOUND.

A mechanic's lien can not be maintained by one who performs labor upon the credit of the contractors employing him, with no intent, at the time of performing the labor, of claiming a lien.

A mechanic's lien can not be enforced when the claim therefor does not show that the work was done at the direct instance of the owner, or that the contractors for whom the work was done occupied such a relation to the owner as made them his agent within the meaning of the lien law.

*Appeal from Superior Court, Pierce County.*

*Claypool & Haight*, for appellant.
*Snell & Bedford*, for respondents.

The opinion of the court was delivered by

HOYT, J.—This action was brought to foreclose a lien for labor alleged to have been performed by the plaintiff on two certain houses which were being erected for the defendants Hodder by the other defendants. The court below found as a fact that the labor for which the lien was claimed was performed upon the sole credit of the con-

tractors who were erecting the buildings, and with no intent to claim a lien thereon. Taking all the testimony in the record together, we think it justified this finding. It is true that there were some isolated statements in the testimony of the plaintiff which tended to show that he at all times intended to claim a lien upon the buildings for his labor, but some of his own testimony is inconsistent with this theory; and when all of it is investigated in the light of facts sufficiently established by other proofs in the case, we think it does not sustain his contention that he so intended to claim a lien.

The proof is unsatisfactory as to whether or not he kept any correct account showing just how many days he worked upon these particular buildings. His time book, offered in evidence, shows that the labor for which he claimed a lien was more than half of it performed in December, while the testimony taken as a whole conclusively shows that the buildings upon which he sought to enforce his lien were not commenced until some time in January, the contract for their erection not having been entered into until after the first of January. From this it will be seen that his testimony as to the amount of labor which he had performed upon these particular buildings was very unsatisfactory, and when taken in connection with the conceded fact that he was regularly employed for a period extending over a year or more by the firm who had the contract for erecting these buildings, and worked for them indiscriminately upon these or other buildings as they directed, it seems clear that the conclusion of the lower court was right.

Beside, there is no attempt by him to definitely specify as to how much of the work for which he claimed a lien was done upon each of the two buildings owned by said defendants Hodder, nor is there any attempt to show such a state of facts as would justify a joint lien for the whole

amount upon both of said buildings. There is a claim made only for a separate lien as against each of the buildings for half of the amount due for such labor upon the general allegation and proof that the work proceeded upon said buildings together, and that he thinks he performed about as much labor upon the one as on the other. The fact that he failed to keep any separate account of the work done upon each separate house, though not in itself conclusive, tends very strongly to sustain the finding of the court that he did not intend at the time he so performed such labor to look to the buildings at all, but instead thereof relied entirely upon the credit of the firm by which he was employed.

Another matter tending strongly to support such finding was the fact, conceded by the plaintiff in his testimony, that in the settlement between him and the firm for which he was working there was a request on the part of such firm that he wait eight months for his pay, to which request he, without objection, agreed. This fact alone would tend very strongly to show that at that time he did not intend to claim a lien upon the buildings. And if this agreement to give such credit had been reduced to legal form, so as to be binding upon the plaintiff, there would be much force in the argument that by giving such credit he had waived his right to a lien upon the buildings, even although at all times he had intended to rely upon and, if necessary, enforce the same. The decree of the court below should be affirmed, for the reason assigned by the superior court.

However, there is another reason why this lien can not be maintained. It is not claimed that the work was done at the direct instance of the owners of the buildings, nor is there any allegation or claim in the lien notice which shows that those for whom the work was done occupied such a relation to such owners as made them their agents within

the meaning of the lien law. The case is, therefore, brought directly within the ruling of this court in the case of *Warren v. Quade*, 3 Wash. 750 (29 Pac. Rep. 827), in which it was held that without such an allegation the lien could not be enforced. Appellant practically concedes that this lien is within the ruling in that case, but contends that the decision therein was wrong. We have reëxamined the question, and though it is true that there are some cases which hold that if the lien notice contains the allegations specially required by the statute to be set out therein it is *prima facie* valid, and the other facts necessary to its enforcement can be shown upon the trial, and the lien sustained, such decisions do not so well harmonize with our views as those which hold that there must be sufficient facts set out in the lien notice to *prima facie* show that the lien can be enforced. If such is not to be the construction of our statute, every beneficial purpose would have been accomplished by a provision that the lien notice need only contain an allegation of the fact that the person claimed a lien for a certain amount upon certain property therein described. If the only object of the lien notice is to put persons upon inquiry, such a notice would fully accomplish its purpose. This construction of our law would make a large number of provisions, therein fully set out, of no practical utility whatever, and this being the effect of such interpretation we do not feel inclined to adopt it. We prefer to adopt an interpretation which makes the lien notice in itself of some practical utility, and enables a searcher of the title to ascertain from such notice whether or not the facts exist which will warrant the enforcement of the lien for which the claim is filed. For these and many other reasons, which might be given, we are satisfied with the decision in the case above cited, and an adherence thereto will result in an affirmance of the decree rendered in this action.

For the two reasons above set forth the judgment of the lower court must be affirmed.

DUNBAR, C. J., and SCOTT. and STILES, JJ., concur.

ANDERS, J., concurs in the result.