## PACKARD v. THE DENVER SAVINGS BANK.

1. COLLATERAL SECURITY—REHYPOTHECATION.
A rehypothecation of securities, such as promissory notes, held as collateral, is not a conversion thereof.
2. PLEADING—PRACTICE.
As a defense to an action against a bank for money deposited with it, it was alleged in the answer that plaintiff accepted of defendant certain promissory notes, etc., in full settlement and discharge of the said deposits. Plaintiff replied, denying having accepted notes, etc., in satisfaction of the money deposited, and alleged, in a second replication, that "if the said promissory notes or any other securities

were ever accepted by plaintiff in payment of the said deposit or any part thereof plaintiff was induced to accept the same in ignorance of the effect of her action and solely by the fraudulent misrepresentation of said Ferguson." *Held*, that there was no admission that the notes, etc., were received in payment and discharge of the debt, and that it was error to render judgment for the defendant upon the pleadings.

*Error to the District Court of Arapahoe County.*

PLAINTIFF brought suit against the defendant to recover the sum of $5,000, with interest, alleged to have been deposited with the defendant and payment refused. Defendant answered, admitting that on the date alleged (September 1, 1893) defendant owed plaintiff the amount stated in the complaint, but alleged subsequent payment as follows:

" For further answer, alleges that after the making of the said deposits, to-wit: September 1, 1893, D. H. Ferguson, then president of defendant, paid to plaintiff, and plaintiff accepted from him as such president, divers moneys and securities amounting to all the sums of money in the complaint mentioned, in full satisfaction and discharge of the moneys by plaintiff deposited with defendant, all which securities and money plaintiff has converted to her own use, and no part of which has been tendered back or offered to defendant.

" For further answer, alleges that after the making of the several deposits, to-wit, etc., D. H. Ferguson, then president of defendant, delivered to plaintiff, and plaintiff accepted, certain promissory notes and moneys of the value of $10,899.21, in full satisfaction and discharge of the said deposits, and of all moneys in the complaint mentioned."

Plaintiff denied payment of the amount in controversy and proceeded. For a proper understanding of the controversy, it seems necessary to set out the replication in full.

" And for reply to the second and third defenses in the answer, denies that the said Ferguson paid to plaintiff any sums and securities whatsoever. Denies that plaintiff accepted any such sums and securities in satisfaction of the

moneys by plaintiff deposited with the defendant. Avers that whatever moneys were paid by said Ferguson to plaintiff were accepted by plaintiff as part payment of the said deposits. Avers that no securities whatever were by said Ferguson delivered to plaintiff. Admits that four promissory notes of one Cranmer, payable to one Mayham, were by the said Ferguson, according to the statements of the said Ferguson, made to plaintiff, set apart by said Ferguson by way of collateral security to plaintiff. Avers that afterwards said Ferguson deposited said notes with the First National Bank of Denver, as security for moneys by plaintiff borrowed of said First National Bank of Denver, and the same are now held by the First National Bank of Denver, subject to the pledge made by said Ferguson.

"For further reply to the second and third defenses, avers that about the eighth of September, 1893, defendant having, for the purpose of defrauding plaintiff and other depositors, or other purpose of its own, closed its doors, and the money so deposited with defendant being the only money available to plaintiff wherewith to meet pressing demands, and the plaintiff being a woman without experience in business, and not knowing the financial condition of defendant, went to the bank of the defendant in great fear, trepidation and distress to demand said moneys and make inquiry touching the condition of the bank; that thereupon said Ferguson, then president of defendant, well knowing the weakness and ignorance of plaintiff, and contriving to deceive and defraud plaintiff of the said moneys, received and saluted plaintiff with great manifestation of friendly interest in plaintiff; and producing a certain envelope, then and there exhibited to plaintiff a certain promissory note for the sum of $5,000, theretofore executed by one Brown, as plaintiff according to her recollection and belief avers, and four other certain promissory notes, each for $1,250, executed by one M. J. Cranmer, payable to one Mayham, and declared in effect to plaintiff that for her protection he had set apart the said promissory notes out of the assets of the bank for the security

of plaintiff, to be held as collateral to the said deposit to the amount thereof, and then and there represented to plaintiff that the said notes and the whole thereof were a good and valid security for plaintiff's said deposits; that the makers thereof were persons of large property, well able to pay and satisfy the said notes, and that by such allotment and setting apart of the said notes, plaintiff was and would be amply secured; said Ferguson then and there offered to pay to the plaintiff the balance and residue of the said deposit, and produced to the plaintiff a check for the sum of $639.21, of which said Ferguson represented to plaintiff was for that amount; and plaintiff, well believing and supposing said Ferguson to be in truth animated only by his great friendship for plaintiff, and being overcome by what plaintiff believed to be the kindness and generosity manifested by said Ferguson in preserving and setting apart the said promissory notes for the security of plaintiff, subscribed the check so presented by the said Ferguson, and delivered the same to the said Ferguson, and received of said Ferguson out of the moneys of defendant, as plaintiff on information and belief avers, the sum of $639.21, and no other moneys.  Further avers that afterwards the said promissory note of $5,000 was by the maker thereof, or some other person, duly paid and the same came to the use of plaintiff, and save the said sum of $639.21, so paid by said Ferguson, and $5,000 paid by the maker of the promissory note last mentioned as aforesaid, no part of said deposit hath ever paid to the plaintiff, and plaintiff further avers that the said M. J. Cranmer at the time aforesaid was and long since hath been a person of no means whatsoever, wholly insolvent and unable to pay the said promissory notes, or any considerable part thereof, all which was well known to the said Ferguson and to the defendant at the time aforesaid, and the said Ferguson in and about pretending to set apart the said promissory notes for the protection of plaintiff was contriving and intending to deceive and defraud plaintiff, and to afterwards set up and pretend that the said promissory notes were delivered to plaintiff and

accepted by her in payment of her said deposit; and plaintiff saith that if the said promissory notes or any other securities were ever accepted by plaintiff in payment of the said deposit or any part thereof, plaintiff was induced to accept the same in ignorance of the effect of her action and solely by the fraudulent misrepresentation of the said Ferguson herein set forth."

Defendant moved for judgment upon the pleadings, which was allowed.

Messrs. WELLS, TAYLOR & TAYLOR, for plaintiff in error.

Messrs. CARPENTER & McBIRD and Mr. A..M. STEVENSON, of counsel, for defendant in error.

REED, P. J., delivered the opinion of the court.

The only question presented is whether the judgment of the court in allowing the motion for judgment upon the pleadings was correct.

The fact is established by the pleadings that defendant delivered notes to the plaintiff of sufficient amount, if good, together with the $639.21 paid in cash, to discharge the indebtedness; that of the notes, one for $5,000 was paid, leaving about $5,000 unpaid; also that Ferguson, president of the defendant, acting for the plaintiff, hypothecated the other four notes with the First National Bank as collateral security and obtained money for the plaintiff; that such notes had not been paid, and that the maker was insolvent.

The fact stated in the pleading and relied upon by counsel of defendant that plaintiff had converted the notes to her own use, and "had not tendered them back," I consider of no legal importance in establishing the allegation that the notes were taken in payment and full satisfaction. It has long been regarded as legal that a holder could rehypothecate securities of that kind held as collateral, and so long as they were used as collateral only, and were not sold and

passed beyond the control of the pledger, there was no con-
version, and it still remained collateral.

The defendant alleges that the notes were received by the
plaintiff in full satisfaction and discharge of the indebted-
ness.   The plaintiff denies that they were so received, and
alleged that they were received as collateral security.

Here is a clear and well defined issue of fact to be deter-
mined upon trial.   It seems that no ground for the motion
for judgment was stated by counsel, and no reason given by
the court for sustaining it.   Counsel assumes in argument,
that probably the court's judgment was based upon the con-
cluding clause of the replication,—"*If the said promissory
notes or any other securities were ever accepted by plaintiff in
payment of the said deposit or any part thereof, plaintiff was
induced to accept the same in ignorance of the effect of her
action and solely by the fraudulent misrepresentation of the said
Ferguson;*" that the court regarded it as an admission that
the securities were received in payment and discharge.   The
paragraph is indefinite and equivocal to a certain extent, but,
when taken in connection with former allegations, cannot be
regarded as an admission, but rather as an unfortunate use
of words to convey a meaning.   The only meaning that can
be imputed to it is that, if it was in law and fact a payment,
she at the time was ignorant of the fact, and the result was
obtained through the fraud and imposition practiced by Fer-
guson, and not by her contract, consent or knowledge.   This
meaning can be fairly inferred from the language used, and,
by giving it that construction, it is in harmony with the bal-
ance of the replication.   If it does not mean that, it means
nothing, as the language used, giving it its broadest signifi-
cance, cannot be construed as a direct admission of any fact.
Boone on Code Pleading, sec. 105–109; *Siter v. Jewett,* 33
Cal. 92; *Nudd v. Thompson,* 34 Cal. 39; *Rice v. Bush,* 16
Colo. 484; *Vanderbilt v. Schreyer,* 28 Hun (N. Y.) 537;
*Swift v. Kingsley,* 24 Barb. (N. Y.) 541; *Robins v. Maid-
stone,* 4 Q. B. 811.

It follows that regardless of the supposed concession or

admission, the issue of fact as to what the transaction was should have been tried, and that the court erred in its judgment for the defendant upon the pleadings, and that the judgment must be reversed.

*Reversed.*