HARRIS ET AL. v. HARRIS ET AL.

1. JUDGMENT ON THE PLEADINGS.
Unless there is an admission by the plaintiff of some fact which renders a recovery impossible, or the claim is such that no legal recovery could be had, judgment for the defendant upon the pleadings is not allowable.

2. SAME.
Where the statement of a good cause of action is informal or defective, but the defect is such as may be cured by amendment, judgment upon the pleadings against the plaintiff is not warranted.

3. AMENDMENTS.
The power to amend pleadings continues until the evidence has been introduced. Pleadings may be amended to make them conform to the facts proved.

4. MECHANIC'S LIEN—STATEMENT.
A subcontractor claiming a lien must, in his statement, set out the terms and conditions of the contract between him and the original contractor, but the contract between the original contractor and the owner need not be so stated by him.

5. SAME.
A lien statement which sets out that the contract price was $250, that the owner had paid $125, "and that the sum of $— is still due and owing," is a substantial compliance with the requirement of the statute that such statement shows the balance due the claimant.

*Appeal from the District Court of Arapahoe County.*

THE action was brought to enforce a mechanic's lien against certain lots and a building. At the time the con-

tract for building was filed, also at the time of the filing of the petition for a lien, the title to the lots was in John · H. Harris. The property was, it appears, conveyed to Maud N. Harris, the other appellee. On the 5th of March, 1893, John H. Harris, the record owner, made an agreement with William Miller to erect a building upon the lots. March 6, 1893, Miller made a contract with appellants by which they, for the sum of $250, were to furnish the material and plaster the building. It is alleged that Miller completed the building according to agreement, and appellants fulfilled their contract of plastering, finishing it on September 16, 1893; that appellants had been paid $125 upon the contract, the balance remaining unpaid; that on October 14, 1893, they filed their statement of lien. Appellants further alleged that on or about the 10th day of July, 1893, John H. Harris personally promised to pay the contract price of $250 on the contract made by Miller, and that at the time of the purchasing the material, performing the labor, and the filing the lien statement, John H. Harris was indebted to Miller in an amount greater than the sum due the appellants. Prayer for a personal judgment against John H. Harris, based on his alleged promise to pay; for $125; for a lien and foreclosure upon the premises; and an attorney's fee of $50.00.

As the judgment was upon the pleadings, it becomes necessary to set out the answer of John H. and Maud N. Harris at some length, in substance as follows:

" They admit record title to the lots to be as charged in complaint, but claim that defendant Maud N. Harris was at all times the real owner, and that said real estate was bought, and the building thereon erected, with her money. That on or about May 13th, 1893, the defendant John H. Harris entered into a written contract [copied in full in the answer] with one William Miller, whereby said Miller agreed to build upon a portion of the lots described in the complaint, a brick house, to be completed by July 31st, 1893, for a consideration of $3,848, to be paid by the owner in installments upon the architects' certificate, less twenty per cent to be retained

until the final payment. That said contract provided that should said contractor fail in the performance of any of the agreements therein on his part, then on certificate of the architects and three days' written notice to the contractor, the owner should be at liberty to provide such labor or materials, and to deduct the costs thereof from any money then due or to become due the contractor, and to terminate the contract and to enter and take possession of all materials, and employ any other person to finish the work, holding the contractor liable for the expense thereof.

" The said contract further provided that if there should be any lien or claim for which the owner or premises might be liable, the owner should have the right to retain out of any payment then or thereafter due, an amount sufficient to indemnify him against the same, and if there should prove to be any such claim after all payments are made, the contractor should refund to the owner all moneys paid to discharge such claims.

" That said William Miller proceeded to construct said house and entered into various subcontracts in respect thereto, and as to whether he entered into a contract with the plaintiffs, as set forth in their complaint, or any contract whatever, defendants have no knowledge or information upon which to base a belief. That from time to time said Miller drew money from the defendant John H. Harris to apply on said contract price, until he had so drawn $2,975, representing, and with the distinct understanding, that said Miller should apply the same upon his said subcontracts, but that being called to account, said Miller was unable to show how said money had been applied, excepting $1,800 thereof, and said Harris then and there charged him with having fraudulently disposed of about $1,100 of said money at play. That said Miller, on or about the 20th day of July, 1893, confessing his inability to replace or refund said $1,100, so squandered, terminated said contract, and by losing said money in gambling, he subjected said premises to various mechanics' liens, to the great injury of defendants.

"That at the abandonment of said contract, the value of the improvements and materials upon the ground did not exceed $1,800, and that said Miller had overdrawn about $1,200, and at the time plaintiffs filed their lien, said defendant Harris was not indebted to the said Miller, but the said Miller was indebted to him about $1,200. That said Harris completed said house by making direct contract, etc., and although the specifications were modified and the expense reduced, he paid out a total excess above the contract price of about $2,500.

"Defendants admit that defendant John H. Harris paid to plaintiffs $125 upon the order of said Miller, but deny that the said Harris at any time promised to pay the balance to plaintiffs, as set forth in the alleged lien claim in plaintiffs' complaint; and, for want of information, deny that said Miller is still indebted to plaintiffs $125, or any other sum; deny that $50.00 is a reasonable attorney fee for foreclosure; deny that plaintiffs are entitled to recover any attorney fees; deny that all of said lots are necessary for the convenient use of said building.

"Defendants further say that the pretended act of the legislature of the state of Colorado to repeal the act approved March 22, 1883, and incorporated in the Session Laws of 1889, beginning on page 247, and ending on page 253, is not and never was the law in this state, for the reason that the same was never passed [setting out in detail the history of said act through both houses, the failure to enter the yeas and nays upon the report of the conference committee upon the journal of the house, etc.]."

The amendment to the answer alleges that the pretended promise of John H. Harris personally to pay the claim of plaintiffs is collateral, and not evidenced by any writing whatsoever, and that plaintiffs made their contract with defendant William Miller.

The replication specifically denied the allegations of the answer. The case was reached and called for trial May 22, 1895, when counsel of defendants (appellees) filed the following motion:

" Let the record show that the case being called for trial, the defendants John H. and Maud N. Harris move for judgment on the pleadings against the plaintiff and the cross complainants, for the reason that by the allegations of the complaint and the cross complaints it is shown that they are entitled to no relief, and that the defendants should have judgment for costs."

The motion was sustained; judgment entered for the defendant upon the pleadings; an exception taken and an appeal prosecuted to this court.

Messrs. STUART BROS. & MURRAY, for appellants.

Mr. CLAY B. WHITFORD and Mr. H. A. LINDSLEY, for appellees.

REED, P. J., delivered the opinion of the court.

The only question for determination is the correctness of the judgment of the court in finding and entering judgment for the defendant upon the pleadings.

In *Rice v. Bush*, 16 Colo. 484, it is said: " In passing upon a motion by one party for judgment upon the pleadings, after issue joined, all the material allegations of the opposite party must be taken as true; and if the pleadings of the opposite party, though defective in form, are nevertheless sufficient in substance to sustain a judgment in his favor, the motion should not be granted. In general, a motion for judgment upon the pleadings cannot properly be granted except in cases where the pleadings are not sufficient to sustain a different judgment notwithstanding any evidence which might be produced."

In *Mulford v. Estudillo*, 32 Cal. 136, it is said : " A defendant usually demurs or proceeds for a nonsuit, but it is said that if plaintiff admits on the pleadings facts showing that he has no cause of action against the defendant, the court may order judgment for defendant on the pleadings."

It will be observed that the right or power of the court to award a judgment upon the pleadings is very limited and restricted. Unless there is an admission by the plaintiff of some fact that renders recovery impossible, or the claim is such that no legal recovery could be had if established by proof, a judgment upon the pleadings is not allowable ; and it also appears that where the cause of action is informally or defectively stated, but shows a good cause of action if properly stated and might be made good by amendment, judgment upon the pleadings is not warranted.

The motion for judgment cannot be substituted in the place of a demurrer and preclude amendments.

" The power of amendment in pleadings is great under the code. The real limitation seems to be that the amendment shall not bring a new cause of action." *Reeder v. Sayre*, 70 N. Y. 190; *Scorill v. Glassner*, 79 Mo. 449 ; *Stevens v. Brooke*, 23 Wis. 196; *Cook v. Croisan*, 36 Pac. Rep. 532; Bliss, Code Pleading, sec. 429. And by the code the power to amend continues until after the evidence is concluded, enabling a party to make his pleadings conform to the facts proved. No reason is given by the court for allowing the motion, and, after careful examination of the pleadings, I am at a loss to know upon what grounds the judgment was based. The objections or reasons urged by counsel in support of the judgment are those that should have been reached and pointed out upon demurrer, and, if found necessary, amendments should have been allowed.

The case made by the pleadings appears to be one of clear and well defined issues of fact. The court may have been influenced or controlled by the case of *Warren v. Quade*, (Wash.) 29 Pac. Rep. 825, affirmed in *Heald v. Hodder*, 32 Pac. Rep. 728. That court held the complaint fatally defective for a failure of the subcontractor to set out the contract between the owner and principal contractor. The case appears to be relied upon by counsel. It is the first time the question has been raised in this state and called to the attention of the courts. The language of the statute is that the

subcontractor in stating his demand must state : " The name of the person by whom he was employed, or to whom he furnished the materials, with a statement of the terms and conditions of *his* contract."

The constructions of the statute by the *Warren.v. Quade* decision is directly in conflict with the decision of the same question in case of *Lumber Co. v. Gottechalk*, 81 Cal. 641.

The supreme court of New Mexico, in *Post v. Miles*, 34 Pac. Rep. 586, refused to follow the Washington decision, and, were there no counter decisions, this court would decline to follow *Warren v. Quade.* With due respect to the learned court, I must be permitted to say that it does violence to the English language and the statute.

He must state : " The name of the person by whom he was employed or to whom he furnished the materials, with a statement of the terms and conditions of *his* contract." Whose contract ? The statute is in the singular, only provides for the statement of one contract, while the Washington decision requires the statement of two. The subcontractor must, of necessity, state his own contract with the employer or purchaser in order to establish his right to recover. That case requires him also to state the contract between the owner and principal contractor. It is a perversion of the language as well as the intention and sense of the statute. The law does not require impossible or impracticable things. The subcontractor can state his own contract under his control and within his knowledge and to which he was a party ; but to require him to state or set out a contract between two other parties, to which he was a stranger, and in regard to which he could not, in advance, compel a disclosure or information, might preclude him from asserting his claim at all. The language of the statute can bear no such construction. The contract he is to state is the contract made by himself, and there is no statute requiring the statement of two contracts. The correct construction of the statute and the requirements of the complaint appears to me to be those stated in 2 Jones on Liens, sec. 1394 :

"If the lien is claimed directly under an original contract, the claimant must be the contractor, or he must show that he has the right of the contractor by virtue of an assignment, or some form of subrogation to the rights of such contractor. The mere fact that the claimant is a guarantor of the original contractor is insufficient to authorize him to perfect a lien.

"If the claim is made by the contractor, the contract, if in writing, should be set out fully; but if the claim is by a subcontractor, or any one claiming under him, only the fact of the original contract or consent need be stated; but the claimant's own contract, if in writing, should be set out at length. The contract or consent of the owner need not be stated with the precision necessary in pleading; but facts must be stated sufficiently to connect the owner with the claim for a lien." See, also, *Keller v. Houlihan*, 32 Minn. 486; *McGeauflin v. Beeden*, 41 Minn. 408; *Pool v. Wedemeyer*, 56 Tex. 287.

All that could reasonably be expected of a subcontractor, as coming within his knowledge in regard to it, would be a statement of the ownership of the real property, that a contract of some kind was made between the owner and the principal contractor for the construction of a building upon the property, so as to establish the agency of the principal contractor and the statutory privity between the owner and the plaintiff.

The complaint contains the following allegation: "That before the doing of any work by these plaintiffs said John H. Harris promised these plaintiffs that whatever sum should become due them for said labor and materials would be paid by him." In the statement of the lien claim it was said: "That on or about the 10th day of July, said John H. Harris, the owner, agreed with said claimants that if they would do said plastering and furnish material therefor he would pay claimants the sum of $250." A comparison of the two shows them very variant. The facts set out in the statement would, if established, show an original contract and employment

between claimants and Harris. In the complaint it can only be construed as a collateral promise on. default of Miller.

In the complaint it is stated that the promise was made before appellees commenced work. In the statement filed it was alleged that the promise by Harris was on the 10th of July, and that work commenced upon the 6th. If the evidence should show that the promise was made before the commencement of the work and was the inducement, then the personal judgment might be given, but if shown to have been made after the contract was made with Miller, and that the parties were already at work under the Miller contract, not in writing and with no consideration, the promise would be void and could not be the basis of a judgment.

It is contended that no valid judgment could be entered because the lien statement failed to state the balance due. It is stated that the contract price was $250, that Harris, the owner, had paid $125, " and that the sum of $——is still due and owing." In the complaint it is stated that the price was $250; " that plaintiffs have been paid $125 on account of said work and materials, leaving $125 due and unpaid."

The objection in regard to the lien statement is too technical to influence the decision of the case.

It is true that the statute requires the statement to show " the total amount of the indebtedness, the credits thereon, if any, and the balance due such claimants."

As said in *Rice v. Carmichael*, 4 Colo. App. 84: " Such special statute must be strictly construed, and to create the lien the provisions must be specifically and accurately followed; not only conform to the spirit of the law, but to its every detail." It is evident that the intention and purpose of the statute is to have the statement inform any interested party of the actual condition of the account and the amount for which a lien is claimed. In this case, although the blank was not filled, the statement of the amount of the contract at $250, and the payment of $125, showed at once the amount due and unpaid, and fulfilled the intention of the statute, and was such a compliance with the statute as to answer the purpose. "*Id cer-*

*tum est quod certum reddi potest* " is the old maxim of the common law, and is particularly applicable here, and while, technically, the blank should have been filled, no one who read it could be misled or misinformed. It only required a very simple and elementary mental process to fill the blank, and if technically subject to criticism, the failure to put the figures in the blank was not of such importance as to warrant a judgment upon the pleadings.

The statement was for the purpose of notice, and, as a notice, conveyed all the information necessary, while the complaint, as a pleading, was full and not involved in the objection.

The complaint appears to contain every important allegation and fact, if established, to constitute a cause of action; if not, defendants should have demurred instead of answering. The issues made should have been tried. I can find no valid ground upon which the judgment could have been based.

The judgment will be reversed and cause remanded with instructions to allow amendments to the pleadings, if required, and try the issues made.

*Reversed.*